# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## MEMORANDUM IN SUPPORT OF INFORMAL OPENING BRIEF OF APPELLANTS CHRISTOPHER ROSEMEIER, CHRISTOPHER HILLIARD, JONATHAN WELLS, AND CHARLES TAYLOR, JR.

No.   25-1165          Marvin Harris v. Christopher Rosemeier, et al.
                       7:22-cv-00582-JPJ-PMS

### JURISDICTIONAL STATEMENT

Rosemeier, Hilliard, Wells, and Taylor appeal from the February 18, 2025, District Court order that denied their motion for summary judgment on qualified immunity.

The collateral order doctrine permits immediate appellate review when an order decides "important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Adams v. Ferguson*, 884 F.3d 219, 223-24 (4th Cir. 2018) (cleaned up). An order that denies qualified immunity to a law enforcement officer is a collateral order that is subject to immediate review. *Williams v. Strickland*, 917 F.3d 763, 767-68 (4th Cir. 2019) (citing *Iko v. Shreve*, 535 F.3d 225, 234 (4th Cir. 2008)). Such review is limited to whether the denial of qualified immunity turned on a question of law. *Belton v. Loveridge*, 129 F.4th 271, 276 (4th Cir. 2025). In an interlocutory appeal, the court "consider[s] only the facts as the district court

1

viewed them as well as any additional undisputed facts." *Cox v. Quinn*, 828 F.3d 227, 232 (4th Cir. 2016) (citation omitted).

## STATEMENT OF THE ISSUES

On October 8, 2020, the Skyline Drug Task Force conducted an operation to execute a capias commanding the arrest of Appellee Marvin Harris. During the execution of that capias, law enforcement utilized force against Harris including a strike and multiple taser deployments.

The overarching issue is whether the District Court erred when it denied qualified immunity to Rosemeier, Hilliard, Wells, and Taylor. Sub-issues include

(1) whether the District Court erred when it failed to analyze whether a clearly established right is implicated in this case and failed to define the clearly established right with the requisite specificity;

(2) whether force is permitted to remove from a vehicle a subject who has an outstanding arrest warrant where the officer has a reasonable belief the subject is non-compliant and resisting arrest and, if not, whether that law was clearly established;

(3) whether it is clearly established that mistaken or unintentional uses of force violate the Fourth Amendment;

(4) whether a law enforcement officer may tase a subject if he has a reasonable belief that the subject intentionally punched him during an arrest attempt and, if not, whether that law was clearly established;

(5) whether a law enforcement officer may deliver strikes to and restrain a subject on the ground when the officer reasonably believes the subject has just assaulted a fellow law enforcement officer and, if not, whether that law was clearly established;

(6) whether a law enforcement officer may lawfully deliver strikes and deploy a taser to subdue a subject where the officer has a reasonable belief that the subject continues to pose a threat and is continuing to resist arrest even after he is handcuffed and, if not, whether that law was clearly established; and

(7) whether a Plaintiff waives argument on appeal that he had a clearly established right when the Plaintiff does not contest qualified immunity at the district court level.

## STATEMENT OF THE CASE

The following facts mirror the facts as the District Court viewed them. Appellants include the District Court's statement of undisputed facts and the District Court's summary of Harris's account. Appellants also include other genuinely undisputed facts that were not otherwise considered by the District Court

but were presented for consideration on summary judgment. *See Cox v. Quinn*, 828 F.3d 227, 232 (4th Cir. 2016) (citation omitted) (the court "consider[s] only the facts as the district court viewed them as well as any additional undisputed facts.").

## The District Court's statement of undisputed facts

On July 27, 2020, Harris was indicted in the Augusta County Circuit Court on one count of felonious methamphetamine distribution. (Op. and Order, ECF No. 92 (Feb. 11, 2025).) The following day, the state court issued a capias for his arrest. (Op. and Order 1-2.) On October 8, 2020, at around 10:30 p.m., Harris was riding in the passenger seat of a friend's vehicle. (Op. and Order 2.) Unbeknownst to Harris, his friend was a confidential informant and had told investigators that she would be driving through the area with Harris. (Op. and Order 2.) Based on this information, Wells and another deputy, who was not named in the lawsuit, pulled the vehicle over. (Op. and Order 2.)

The deputies approached the passenger side of the vehicle, where Harris was sitting with his seatbelt on and the window partially rolled down. (Op. and Order 2.) Wells asked Harris to identify himself, but Harris declined. (Op. and Order 2.) Rosemeier arrived at the scene and climbed onto the vehicle's step rail so he could reach through the window into the vehicle. (Op. and Order 2.) After contact with Harris, Rosemeier fell off the step rail. (Op. and Order 2.) The officers then tased Harris and Hilliard punched him in the nose and then opened the passenger door.

4

(Op. and Order 2.) Once Harris was outside the vehicle, he was tased at least two more times and handcuffed. (Op. and Order 2.) On August 12, 2022, Harris pleaded guilty in state court to two counts of Assault on a Law Enforcement Officer based on the events in this case. (Op. and Order 2.)

The District Court's summary of Harris's account

According to Harris, he was never asked to exit the vehicle or remove his seatbelt. (Op. and Order 3.) After Harris politely declined to give his name, Rosemeier ran up to the vehicle, reached through the window, and thumbed Harris in the eye. (Op. and Order 3.) In response, Harris put his hands up in a "defensive posture" which caused Rosemeier to fall off the side of the vehicle. (Op. and Order 3.) Rosemeier and Wells then tased Harris, which left him temporarily unable to move. (Op. and Order 3.)

Harris further alleges that he was still motionless in the vehicle when Hilliard punched him, removed his seatbelt, and threw him to the ground, at which point the officers placed him in handcuffs. (Op. and Order 3.) While Harris was handcuffed and on the ground, both Taylor and Rosemeier tased him and Rosemeier punched him repeatedly in the back. (Op. and Order 3.) A deputy then lifted Harris off the ground so that Hilliard could kick him in the head several times, which caused Harris to lose consciousness. (Op. and Order 3-4.)

<u>Other undisputed facts</u>

As noted above, these facts are other genuinely undisputed facts that were not otherwise considered by the District Court but were presented for consideration on summary judgment. *See Cox*, 828 F.3d at 232 (permitting in an interlocutory appeal consideration of "additional undisputed facts" not considered by the district court).

Before Rosemeier's arrival on scene, Wells communicated Harris's refusal to identify himself or exit the vehicle to Rosemeier. (Rosemeier Resp. to Interrog. 7, ECF No. 64-1.)

When Rosemeier reached into the vehicle's window to extract Harris, he did not intentionally thumb Harris in the eye.[1] (Rosemeier Decl. ¶ 3, ECF No. 64-9.)

Harris did not suffer any injury from being thumbed in the eye and is not claiming any such injury as part of this lawsuit. (Pl. Dep. 46:8-14, ECF No. 64-7.)

Harris's hand made contact with Rosemeier's face while Rosemeier was attempting to unbuckle Harris and remove him from the vehicle, causing

---

[1] While Plaintiff included this fact in his unsworn "Statement of Genuine Issues Disputed Statements of Facts" (ECF No. 68 at 13), he did not point to any evidence in the record that contradicts Defendants' evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present **affirmative evidence** in order to defeat a properly supported motion for summary judgment.") (emphasis added). The District Court was silent on this point in its Opinion and Order.

Rosemeier to fall off the SUV step rails and causing a laceration with bleeding, bruising, and soreness to Rosemeier's lips and gums. (Rosemeier Resp. to Interrog. 7 & 13; Pl. Dep. 46:15-47:14; Sherman-Stoltz Dep. 52:21-53:11, ECF No. 64-8; Hilliard Decl., Ex. 1, ECF No. 64-10.)

Even when handcuffed on the ground, Harris was not subdued as he continued to roll back and forth as if to get up and he shouted for the confidential informant to approach.[2] (Hilliard Decl.)

Hilliard did not intentionally kick Harris while he was on the ground. (Hilliard Decl.)

<u>The District Court denied summary judgment.</u>

Harris sued Rosemeier, Hilliard, Wells, and Taylor for an alleged 42 U.S.C. § 1983 violation. (Am. Compl., ECF No. 11.) Rosemeier, Hilliard, Wells, and Taylor moved for summary judgment because there was no Fourth Amendment violation or, in the alternative, Harris's Fourth Amendment rights were not clearly established. (Mot. for Summ. J., ECF Nos. 63; Memo. in Supp. of Mot. for Summ. J., ECF No. 64; Reply in Supp. of Mot. for Summ. J., ECF No. 74.)

---

[2] While Harris's unsworn Response brief claims there is a dispute on this point, Harris did not point to any evidence that contradicts Appellants' evidence. (*See* ECF No. 68 at 14.) The District Court was silent on this point in its Opinion and Order.

The District Court denied Appellants' Motion for Summary Judgment and denied Appellants qualified immunity in an Opinion and Order dated February 11, 2025. (ECF No. 92.) The entirety of the District Court's analysis on qualified immunity is this: "As discussed above, Harris and the defendants present contrasting factual accounts of the incident at issue in this case. As a result, the summary judgment record lacks sufficient undisputed facts at this point to determine whether the defendants are entitled to qualified immunity." (Op. and Order 9-10.) The District Court did not analyze whether Harris had a clearly established right. (*See* Op. and Order 8-10.) The District Court did not define with any level of specificity Harris's clearly established right(s). (*See* Op. and Order 8-10.)

Rosemeier, Hilliard, Wells, and Taylor appealed the District Court's Order on February 18, 2025. (Notice of Appeal, ECF No. 102.)

## ARGUMENT SUMMARY

The District Court erred in denying Rosemeier, Hilliard, Wells, and Taylor qualified immunity because it did not analyze the second prong of the qualified immunity analysis – whether Harris had a clearly established right. The District Court also erred because it did not define Harris's clearly established right(s) with any level of specificity.

Even if the District Court conducted the clearly established right analysis, it would not have been able to find any clearly established right given the facts as viewed by the Court in addition to other undisputed facts.

Rosemeier did not violate any clearly established right when he allegedly thumbed Harris in the eye after reaching through the window, because he had a reasonable belief that Harris was resisting arrest, and it is undisputed that Rosemeier did not intentionally thumb Harris in the eye. Unintentional uses of force do not implicate the Fourth Amendment.

No clearly established right was violated when Harris was tased after his hand made contact with Rosemeier's face because Appellants had a reasonable belief that Harris posed an immediate safety risk as it appeared to them that he had just intentionally punched Rosemeier resulting in injury.

No clearly established right was violated when Hilliard delivered a closed-fist strike to Harris's face and then allegedly moved to restrain him on the ground after Rosemeier was struck because a law enforcement officer may deliver strikes and restrain a subject on the ground when the officer has an arrest warrant and a reasonable belief that the subject has just assaulted a fellow law enforcement officer.

None of Harris's clearly established rights were violated when he was allegedly tased and punched while handcuffed on the ground because it is

undisputed that Harris continued to roll back and forth as if to get up and yell for the confidential informant to approach even after he was handcuffed, and a law enforcement officer may lawfully deliver strikes and deploy a taser to subdue a subject where the officer has a reasonable belief that the subject continues to pose a threat and is continuing to resist arrest even after he is handcuffed.

None of Harris's clearly established rights were violated when Hilliard allegedly kicked him, because it is undisputed that any kicks delivered by Hilliard were unintentional and unintentional uses of force do not implicate the Fourth Amendment. Also, Harris continued to roll back and forth as if to get up and yell for the confidential informant to approach and strikes to subdue a resistant subject are permitted where an officer has a reasonable belief that a subject continues to pose a threat even after he is handcuffed.

Any argument that Harris attempts to make on appeal that he had a clearly established right implicated in this suit was not preserved on appeal because Harris did not contest that Appellants were entitled to qualified immunity at the District Court level.

## ARGUMENT

### Standard of Review

This Court reviews summary judgment *de novo*. *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009). By rule, the trial court shall grant summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.*

To defeat summary judgment, the nonmoving party must present evidence from which "a reasonable jury could return a verdict for the nonmoving party." *See id.*

## Legal Standard

A law enforcement officer sued for a Fourth Amendment violation is entitled to qualified immunity unless (1) the evidence shows a constitutional violation by the officer and (2) the constitutional right at issue was "clearly established" at the time of the alleged misconduct. *Doe v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). The District Court has discretion to decide which prong to analyze first and need only analyze one prong if the Court concludes that the officer is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, in denying a law enforcement officer's request to be granted qualified immunity, the District Court must analyze both prongs, meaning the District Court

must identify the clearly established right at issue. *Belton v. Loveridge*, 129 F.4th 271, 279 (4th Cir. 2025).

A right is "clearly established" if "existing precedent [has] placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015). The case law must be so clear that "*every* reasonable official would understand that what he was doing was unlawful." *Belton*, 129 F.4th at 279 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017).

To overcome qualified immunity, it is the Plaintiff's burden to articulate a violation of a federal right and to show that the right at issue was clearly established at the time of the alleged violation. *See Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024); *see also Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (reversing denial of qualified immunity on motion to dismiss).

The right must not be defined at a "high level of generality." *Wesby*, 583 U.S. at 63-64 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). "Rather, the right must be defined with such particularity as to apply clearly to the specific circumstances facing the officer. If a court properly defines the right, the unlawfulness of the officer's conduct should 'follow immediately' from the

conclusion that the rule 'was firmly established.'" *Belton*, 129 F.4th at 279 (citing *Plumhoff*, 572 U.S. at 778-79) (quoting *Wesby*, 583 U.S. at 64).

Defining the right with specificity is particularly important in the Fourth Amendment context due to the many factual variations involved in Fourth Amendment seizures. *Id.* (citing *Mullenix*, 577 U.S. at 12; *Omeish v. Kincaid*, 86 F.4th 546, 555-56 (4th Cir. 2023); *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017)). Otherwise, it would be "difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (citation and internal quotation marks omitted). The Supreme Court has, thus, instructed courts to identify case law addressing similar circumstances where an officer was found to have violated the Fourth Amendment. *See Belton*, 129 F.4th at 279 (quoting *White*, 580 U.S. at 79).

Failure to properly define the right would permit plaintiffs to "convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 580 U.S. at 79 (citation and internal quotation marks omitted).

<u>Argument</u>

I.      THE DISTRICT COURT ERRED WHEN IT FAILED TO ANALYZE
        WHETHER ANY CLEARLY ESTABLISHED RIGHT EXISTED OR
        DEFINE THE RIGHT WITH THE REQUISITE LEVEL OF
        SPECIFICITY.

As stated above, when a District Court denies law enforcement qualified

immunity, it must perform an analysis on the second prong of the qualified

immunity test – whether the plaintiff's constitutional right at issue was clearly

established. *See Belton v. Loveridge*, 129 F.4th 271, 279 (4th Cir. 2025). In

performing that analysis, the Court must define what the right at issue is with

specificity. *Id.*; *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018) (citation

omitted). Failure to conduct the analysis justifies vacating the order denying

immunity. *Belton*, 129 F.4th at 279-80.

Here, the District Court did not analyze the second prong at all. (Op. and

Order 8-10.) It did not analyze whether a clearly established right was implicated

in this suit, and it did not define what that right was. (Op. and Order 8-10.) In

contravention of the Supreme Court's requirement, the District Court did not

identify a single case where law enforcement was found to have violated a

constitutional right in circumstances similar to those present here. *See Belton*, 129

F.4th at 279 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

Because the District Court did not conduct the required analysis, the District

Court's denial of qualified immunity to Appellants was error and should be

reversed.

II. EVEN IF THE DISTRICT COURT CONDUCTED THE CLEARLY
ESTABLISHED RIGHT ANALYSIS, IT WOULD NOT BE ABLE TO
FIND ANY CLEARLY ESTABLISHED RIGHT THAT WAS
VIOLATED.

It is well established that the right to make an arrest carries with it the right

to use a degree of physical coercion or threat thereof to effect the arrest. *Saucier v.*

*Katz*, 533 U.S. 194, 208 (2001). To determine whether an officer's application of

force was unreasonable and therefore in violation of the Fourth Amendment, courts

examine officers' actions in light of the facts and circumstances confronting them.

*Graham v. Connor*, 490 U.S. 386, 397 (1989). Officers do not have to use

minimum force. *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

In determining whether the force was reasonable, the court must consider

"the severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether he is actively resisting arrest or

attempting to evade arrest by flight." *Graham*, 490 U.S. at 397. "The test of

reasonableness . . . is not capable of precise definition or mechanical application."

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Thus, the court should "balance the

nature and quality of the intrusion on the individual's Fourth Amendment interests

against the importance of the governmental interests alleged to justify the intrusion. *Tenn. v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted)).

This "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "The test is, at bottom, one of *objective* reasonableness, 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Belton v. Loveridge*, 129 F.4th 271, 277-78 (4th Cir. 2025) (citing *id.* at 396).

Here, there is no question that Appellants were justified in using some level of force to effect the arrest of Harris who was wanted on an outstanding capias. *See Saucier*, 533 U.S. at 208. The question is whether the level of force used by Appellants violated any clearly established right. The answer is no.

> **a. Rosemeier did not violate any clearly established right when he allegedly thumbed Harris in the eye after reaching through the vehicle window, because he had a reasonable belief that Harris was resisting arrest, and it is undisputed that any thumbing in the eye by Rosemeier was accidental.**

Accidental applications of force cannot form the basis of an excessive force claim. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) ("[T]he Fourth Amendment addresses 'misuse of power,' . . . not the accidental effects of

otherwise lawful government conduct."); *Schultz v. Braga*, 455 F.3d 470, 480 (4th Cir. 2006) ("[A] seizure within the meaning of the Fourth Amendment always requires an intentional acquisition of physical control, it does not extend to accidental effects or unintended consequences of government action.").

> It makes little sense to apply a standard of reasonableness to an accident. If such a standard were applied, it could result in a fourth amendment violation based on simple negligence. The fourth amendment, however, only protects individuals against "unreasonable" seizures, not seizures conducted in a "negligent" manner. The Supreme Court has not yet extended liability under the fourth amendment to include negligence claims.

*Dodd v. City of Norwich*, 827 F.2d 1, 7 (2d Cir. 1987).

The plaintiff bears the burden of proving a volitional act by the state actor. *Brice v. City of New York*, 528 F. Supp. 2d 504, 510 (M.D. Pa. 2007) (citation omitted); *Bryant v. Gillem*, No. 2:18-CV-122-BR, 2019 U.S. Dist. LEXIS 188879, at *34 n.19 (N.D. Tex. Oct. 31, 2019) (granting summary judgment to officer where plaintiff failed to present evidence to contradict officer's statement that shooting was an accident), *aff'd* 965 F.3d 387 (5th Cir. 2020).

"An officer must be permitted to grab [an] arrestee and put him in handcuffs when effectuating [an] arrest." *Kasiah v. Crowd Sys.*, 915 F.3d 1179, 1184 (8th Cir. 2019); *see also Coco v. Dear*, No. 23-1787, 2024 U.S. App. LEXIS 8593, at *10 (3d Cir. Apr. 10, 2024) (grabbing clothing not excessive); *Priest v. Grazier*, 860 F. App'x 343, 344-45 (5th Cir. 2021) (granting qualified immunity to officers

who, after spending two minutes trying to get Plaintiff to lower his window or open his door, broke the window, took him to the pavement, held his face down in broken glass while cuffing him, and struck him three times to get him to stop pulling his hand away); *Holmes v. City of Bastrop*, 141 F. App'x 315 (5th Cir. 2005) (per curiam) (no excessive force where plaintiff attempted to flee by jumping on train, officer grabbed plaintiff, and plaintiff fell under the train causing his legs to be severed); *Ritchie by & Through Ritchie v. Jackson*, No. 95-3057, 1996 U.S. App. LEXIS 26644, at *4-5 (4th Cir. Oct. 11, 1996) (minimal and reasonable force used when officers grabbed plaintiff by shirt and lifted him off the ground when attempting to handcuff plaintiff).

"A standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002).

There is no relevant case law holding an officer cannot reach in through a vehicle window and grab a subject and his seatbelt in an attempt to handcuff a subject and execute a valid arrest warrant, where the officer believes the subject is refusing to comply with commands to exit the vehicle.

Here, Rosemeier submitted a declaration in support of his Motion for Summary Judgment, signed under the penalty of perjury, stating that when he reached into Harris's window, he was attempting to grab Harris and remove him

from the vehicle pursuant to the outstanding warrant. (Rosemeier Decl., ECF No. 64-9.) At the time of this incident, it was late at night and the vehicle window was half-way up. (Op. and Order 2.) Rosemeier stated that he did not thumb or punch Harris in his eye, but that if any such conduct had occurred, it was accidental. (Rosemeier Decl.)

In response, Harris put forward no evidence to contradict Rosemeier's account that any thumbing in the eye was purely accidental. (ECF No. 68.) The District Court did not address whether accidental uses of force could form the basis for a Fourth Amendment claim, and it was silent on the absence of a genuine factual dispute on this point. (Op. and Order.) Because (1) no clearly established law states that officers who accidentally slip when attempting to grab a subject to apply handcuffs and make an arrest violate the Constitution and (2) the clearly established law is that accidental uses of force do not violate the Constitution, none of Harris's clearly established constitutional rights were violated when he was allegedly thumbed in the eye. *See, e.g., Brower*, 489 U.S. at 596.

Further, Rosemeier's attempt to grab Harris and his seatbelt to effectuate the arrest did not violate any clearly established right. Rosemeier had a reasonable belief that Harris was resisting arrest when he attempted to grab Harris and his seatbelt to execute the arrest warrant. Rosemeier's Interrogatory Answers, signed under oath, stated that Wells informed him before Rosemeier's arrival on scene

that Harris was refusing to identify himself and refusing to exit the vehicle. (Rosemeier Resp. to Interrog. 7, ECF No. 64-1.) While Harris disputed that he was ever ordered out of the vehicle, he did not dispute that Wells *told* Rosemeier that Harris refused to exit the vehicle. (*See* ECF No. 68.)

A reasonable officer *in Rosemeier's shoes* would have understood when he arrived on scene (1) that he had the legal authority to arrest Harris based on the existence of an outstanding warrant and (2) that Harris was refusing to comply with orders of another officer including an order to exit the vehicle. (*See* Rosemeier Resp. to Interrog. 7.) A reasonable officer in Rosemeier's shoes would have also understood that he had the legal authority to attempt to grab Harris so that he could be handcuffed and taken into custody. *See, e.g., Brown*, 278 F.3d at 369; *Kasiah*, 915 F.3d at 1184. Therefore, Rosemeier's attempt to grab Harris and his seatbelt was reasonable under the circumstances and he did not violate any of Harris's clearly established rights.

For these reasons, Rosemeier is entitled to qualified immunity on the allegations that he thumbed Harris in the eye.

**b. No clearly established right was violated when Harris was tased after his hand made contact with Rosemeier's face because Appellants had a reasonable belief that Harris posed an immediate safety risk as it appeared to them that he had just intentionally punched Rosemeier resulting in injury.**

Here, the issue is whether Rosemeier and Wells were justified in tasing Harris after he made contact with Rosemeier's face in such a way that it caused Rosemeier to fall off the vehicle's step-rail.

The use of a taser is lawful where the subject poses an immediate safety risk. *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 909 (4th Cir. 2016); *see also Hogan v. Beaumont*, 779 F. App'x 164, 167 (4th Cir. 2019) (two taser deployments not excessive where subject was agitated, acting erratically, ignoring police instructions, and threatening police); *Meyers v. Balt. Cty.*, 713 F.3d 723, 732-33 (4th Cir. 2013) (holding three taser deployments to subject resisting arrest and who advanced towards officers not excessive).

It is undisputed that after Rosemeier reached in through the vehicle's window, Harris made contact with Rosemeier's face in such a way as to cause him to fall off the step-rail of Harris's vehicle. (Op. and Order 2.) It is undisputed that Rosemeier was injured as a result. (Rosemeier Resp. to Interrog. 7 & 13, ECF No. 64-1; Hilliard Decl., Ex. 1, ECF No. 64-10.)

While Harris claims that the contact with Rosemeier resulted from his placing his hands up in a defensive posture, qualified immunity requires us to look

at the *perspective of the officers on scene* and determine what a reasonable officer would be permitted to do in that scenario. *See Belton v. Loveridge*, 129 F.4th 271, 277-78 (4th Cir. 2025). Harris's ultimate intent when he raised his hands, therefore, is irrelevant to the analysis.

Let us consider Rosemeier's perspective. He arrives on scene with information that there is an outstanding warrant for Harris's arrest and that Harris is refusing commands to identify himself or get out of the vehicle. (Rosemeier Resp. to Interrog. 7.) He attempts to grab Harris and his seatbelt to place Harris in handcuffs and effectuate the arrest. (Rosemeier Decl, ECF No. 64-9.) Harris makes contact with him in the face hard enough to knock him off the step rails and cause injury to Rosemeier including a laceration with bleeding, bruising, and soreness to Rosemeier's lips and gums. (Rosemeier Resp. to Interrog. 7 & 13; Pl. Dep. 46:15-47:14, ECF No. 64-7; Sherman-Stoltz Dep. 52:21-53:11, ECF No. 64-8; Hilliard Decl., Ex. 1.) Rosemeier did not have the benefit in that moment of reflecting in his armchair and asking himself, "Did Harris really intend to hit me or was it just an accident?" He had to make a split-second decision in that moment as to what had just happened and what level of force was necessary to complete the objective of effecting the arrest. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Belton*, 129 F.4th at 277-78 (holding that the qualified immunity analysis should not be viewed through the 20/20 lens of hindsight).

At that point, whether Harris's contact with Rosemeier was intentional or not, a reasonable officer in Rosemeier's shoes would have reasonably believed that Harris posed an immediate safety risk, given that Harris had just injured Rosemeier, therefore the clearly established law at the time justified the use of the taser. *Estate of Armstrong*, 810 F.3d at 909. There is no clearly established law proscribing Rosemeier's conduct in that moment.

For similar reasons, Wells's alleged taser deployment in the moment after Harris made contact with Rosemeier's face causing him to fall did not violate clearly established Fourth Amendment principles. Wells had just observed a subject hit Rosemeier in the face, causing him to fall. (Wells Resp. to Interrog. 7, ECF No. 64-5.) A reasonable officer in that situation would have concluded that Harris posed a safety threat and would have understood, based on clearly established law, that the use of a taser in that moment was justified. *See Estate of Armstrong*, 810 F.3d at 909.

For these reasons, Rosemeier and Wells are entitled to qualified immunity for allegedly deploying their tasers after Harris made contact with Rosemeier's face, causing him to fall off the vehicle's step-rails.

**c. No clearly established right was violated when Hilliard delivered a closed-fist strike to Harris's face and then allegedly moved to restrain him on the ground after Rosemeier was struck because a law enforcement officer may deliver strikes and restrain a subject on the ground when the officer has a reasonable belief that the subject has just assaulted a fellow law enforcement officer.**

The use of strikes including punches and kicks on a physically resistant arrestee or one that otherwise poses a safety risk is lawful. *Wilson v. Flynn*, 429 F.3d 465, 466 (4th Cir. 2005) (no excessive force where plaintiff resisted arrest and during the melee, officer punched plaintiff in the face, sprayed plaintiff with mace and plaintiff further alleged he was shoved, his foot was stomped on, he was punched repeatedly, kicked in the face and ribs resulting in badly bruised and swollen face and nasal fracture); *Allen v. City of Dunn*, 708 F. Supp. 3d 743, 755 (E.D.N.C. 2023) ("No Fourth Circuit authority holds that the use of punches on a physically resisting suspect is objectively unreasonable. And a wealth of other authority points in the opposite direction.") (citing, e.g., *Brax v. City of Grand Rapids, Mich.*, 742 F. App'x 952, 956-57 (6th Cir. 2018); *Conklin v. Hale*, 680 F. App'x 120, 123 (3d Cir. 2017); *Husbands ex. rel. Forde v. City of New York*, 335 F. App'x 124, 128-29 (2d Cir. 2009); *Winters v. Adams*, 254 F.3d 758, 764-66 (8th Cir. 2001)).

In *Mobley v. Palm Beach Cty. Sheriff Dep't*, the officers' strikes and kicks to plaintiff's face were lawful because the suspect had just assaulted a law enforcement officer and the suspect refused to surrender his hands to be cuffed

24

despite the application of escalating force and repeated use of a taser. 783 F.3d 1347, 1351, 1355 (11th Cir. 2015).

Forcing a resisting subject to the ground is an objectively reasonable use of force where an arrest is justified. *Solis v. Serrett*, 31 F.4th 975, 979 (5th Cir. 2022) (no excessive force when, during a minor traffic stop, officers grabbed a belligerent passenger's arms, took her to the ground, cuffed her, and then raised her up); *Hamstead v. Walker*, No. 20-1650, 2022 U.S. App. LEXIS 27804, at *13-14 (4th Cir. Oct. 5, 2022) (forcing plaintiff to ground where she was obstructing officer's investigation and was swatting, kicking, and trying to pull away from officer was reasonable); *Priest v. Grazier*, 860 F. App'x 343, 344-45 (5th Cir. 2021) (granting qualified immunity to officers who, after spending two minutes trying to get Plaintiff to lower his window or open his door, broke the window, took him to the pavement, held his face down in broken glass while cuffing him, and struck him three times to get him to stop pulling his hand away); *Ankele v. Hambrick*, 136 F. App'x 551, 553 (3d Cir. 2005) (finding no excessive force where officer grabbed subject and threw him on police car when subject was backing away from officer as officer asked about subject's involvement at scene of car accident); *see also Winfree v. Gibson*, No. 3:23-cv-00005, 2024 U.S. Dist. LEXIS 13872, at *7 (W.D. Va. Jan. 25, 2024) (finding takedown of plaintiff resulting in

scrapes to elbow and knee were lawful where plaintiff refused to move away from an injured bear despite repeated orders by law enforcement).

As is required by the qualified immunity analysis, let us consider Hilliard's perspective before the strike was delivered. There was an active warrant commanding Harris's arrest. (Capias, ECF No. 64-3.) Hilliard arrives on scene where Harris had been refusing commands to identify himself. (Op. and Order 2-3.) He observes Harris make contact with Rosemeier's face hard enough to knock Rosemeier off the vehicle's step-rails. (Op. and Order 2.)

At this point, Hilliard needs to make a decision **right now**, in this second, as to what just happened and what type of force is going to be necessary to bring Harris into custody while minimizing the risk to law enforcement and bystanders. Like Rosemeier, Hilliard does not have the luxury of pondering whether Harris intended to hit Rosemeier or if it was just an accident. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Belton v. Loveridge*, 129 F.4th 271, 277-78 (2025) (holding that the qualified immunity analysis should not be viewed through the 20/20 lens of hindsight).

Any reasonable officer in Hilliard's shoes would have perceived a significant safety risk posed by Harris and would have perceived that Harris was now physically resisting arrest. *See Belton*, 129 F.4th at 277-78 (citation omitted) ("The test is, at bottom, one of *objective* reasonableness, 'judged from the

26

perspective of a reasonable officer on the scene . . . ."). Therefore, Hilliard's one closed-fist strike to Harris was not unreasonable and was not clearly proscribed by the Fourth Amendment. *See, e.g., Wilson,* 429 F.3d at 466 (no excessive force where plaintiff resisted arrest and during the melee, officer punched plaintiff in the face, sprayed plaintiff with mace and plaintiff further alleged he was shoved, his foot was stomped on, he was punched repeatedly, kicked in the face and ribs resulting in badly bruised and swollen face and nasal fracture); *Mobley,* 783 F.3d at 1351, 1355 (officers' strikes and kicks to plaintiff's face were lawful where the suspect had just assaulted a law enforcement officer and the suspect refused to surrender his hands to be cuffed despite the application of escalating force and repeated use of a taser).

For the same reasons, Hilliard's alleged takedown of Harris to the ground to effect the arrest did not violate clearly established Fourth Amendment principles. *See, e.g., Hamstead,* 2022 U.S. App. LEXIS 27804, at *13-14 (forcing plaintiff to ground where she was obstructing officer's investigation and was swatting, kicking, and trying to pull away from officer was reasonable); *Priest,* 860 F. App'x at 344-45 (granting qualified immunity to officers who, after spending two minutes trying to get Plaintiff to lower his window or open his door, broke the window, took him to the pavement, held his face down in broken glass while cuffing him, and struck him three times to get him to stop pulling his hand away).

Because no clearly established right was implicated here, Hilliard is entitled to qualified immunity on the allegations that he delivered one strike to Harris while he was still in the vehicle and that he forced Harris out of the vehicle and onto the ground.

> **d. None of Harris's clearly established rights were violated while he was allegedly tased and punched while handcuffed on the ground because it is undisputed that Harris continued to roll back and forth as if to get up and yell for the confidential informant to approach even after he was handcuffed, and a law enforcement officer may lawfully deliver strikes and deploy a taser to subdue a subject where the officer has a reasonable belief that the subject continues to pose a threat and is continuing to resist arrest even after he is handcuffed.**

Continued use of force can be justified where a subject continues to struggle after he is handcuffed. *Leach v. Sarasota Cty.*, No. 23-10357, 2024 U.S. App. LEXIS 11637, at *14 (11th Cir. 2024) ("Given Leach's resistance, a reasonable officer could conclude that tasing Leach once to gain compliance, even though Leach was already handcuffed but still resisting, was preferable to an extended struggle inside Weatherwalk's living room, which could have potentially harmed the Deputies or Leach himself."); *see Rambert v. City of Greenville*, 107 F.4th 388, 404 (4th Cir. 2024) (officer entitled to qualified immunity for using deadly force where subject was persistently aggressive toward officer and continued to resist after first shot); *Brossart v. Janke*, 859 F.3d 616, 626 (8th Cir. 2017) (tasing suspect after restrained not excessive where suspect had been violent before

cuffing, he continued to verbally resist after cuffing, and he refused to comply with officer's lawful commands); *see also Anderson v. Driskill*, 550 F. Supp. 3d 596, 626 (E.D. Ark. 2021) (slamming leg of non-compliant, handcuffed suspect to ground not excessive); *Shulgan v. Noetzel*, No. CV-07-051-JLQ, 2008 U.S. Dist. LEXIS 106369, at *33-35 (E.D. Wash. Apr. 10, 2008) (granting summary judgment to officer where handcuffed plaintiff was pushed to the ground after tensing his arms and pulling away from officer).

Here, Hilliard submitted a declaration in support of his Motion for Summary Judgment, signed under the penalty of perjury, stating, "Even after he was handcuffed, Plaintiff was not subdued and continued to resist and yelled for the vehicle's driver[3] asking her to approach while Plaintiff rolled back and forth on the ground which created a risk that Plaintiff could roll to his feet and further assault law enforcement. Plaintiff only calmed down once he started saying he was out of breath at which time he was stood up so that he could catch his breath." (ECF No. 64-10 ¶ 3.) In response, Harris put forward no evidence to contradict Hilliard's account. (ECF No. 68.) The District Court was silent on whether Harris was subdued after handcuffing or if he continued to resist. (Op. and Order 3-4.)

Because strikes and taser deployments are permitted to subdue a handcuffed yet continually resisting arrestee, none of Harris's clearly established rights were

---

[3] The driver was the confidential informant. (Op. and Order 2.)

violated when Harris was allegedly punched and tased after being handcuffed as there is uncontroverted evidence that Harris continued to roll back and forth as if to stand after he was handcuffed which posed a safety risk to officers and bystanders, one of whom was the confidential informant who Harris was yelling at to approach. Not every reasonable officer in Appellants' shoes would have understood that delivering strikes and deploying their tasers to stop Harris from getting up would have violated the Fourth Amendment. *See Belton v. Loveridge*, 129 F.4th 271, 279 (2025) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). This is particularly true, considering that the officers had just seen Rosemeier fall off the vehicle's step rails after Harris made contact with his face.

For these reasons, Taylor and Rosemeier are entitled to qualified immunity on the allegations that they punched and tased Harris in the back while he was handcuffed.

> **e. None of Harris's clearly established rights were violated when Hilliard allegedly kicked him because it is undisputed that any kicks delivered by Hilliard were unintentional and Harris continued to roll back and forth as if to get up and yell for the confidential informant to approach.**

As stated above, accidental uses of force do not violate the Fourth Amendment because applying a reasonableness standard to an accident does not make any sense and could open the door to claims for negligence under the Fourth Amendment. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989); *Schultz v. Braga*,

455 F.3d 470, 480 (4th Cir. 2006); *Dodd v. City of Norwich*, 827 F.2d 1, 7 (2d Cir. 1987); *Bryant v. Gillem*, No. 2:18-CV-122-BR, 2019 U.S. Dist. LEXIS 188879, at *34 n.19 (N.D. Tex. Oct. 31, 2019) (granting summary judgment to officer where plaintiff failed to present evidence to contradict officer's statement that shooting was an accident), *aff'd* 965 F.3d 387 (5th Cir. 2020).

Here, Harris alleges that Hilliard kicked Harris while he was handcuffed on the ground. In support of his Motion for Summary Judgment, Hilliard submitted a declaration stating that he did not kick Harris but that, if his foot did make contact with Harris, such contact was accidental and unintentional. (Hilliard Decl. ¶ 5, ECF No. 64-10.) In response, Harris put forward no evidence to contradict Hilliard's Declaration that any contact by Hilliard's foot was accidental. (*See* ECF No. 68.) The District Court was silent on this point. (Op. and Order.)

Additionally, as stated above, strikes delivered to subdue a resisting yet handcuffed subject do not violate the Fourth Amendment. *See Leach v. Sarasota Cty.*, No. 23-10357, 2024 U.S. App. LEXIS 11637, at *14 (11th Cir. 2024); *Rambert v. City of Greenville*, 107 F.4th 388, 404 (4th Cir. 2024); *Shulgan v. Noetzel*, No. CV-07-051-JLQ, 2008 U.S. Dist. LEXIS 106369, at *33-35 (E.D. Wash. Apr. 10, 2008) (granting summary judgment to officer where handcuffed plaintiff was pushed to the ground after tensing his arms and pulling away from officer).

As mentioned earlier, Harris continued to pose a safety threat while he was handcuffed on the ground as he continued to resist, rolling back and forth as if to get up and yelling for the driver-confidential informant to approach him. (Hilliard Decl.) Therefore, not every reasonable officer in Hilliard's situation would have understood that kicking Harris would have violated the Fourth Amendment.

Because (1) accidental uses of force do not implicate the Fourth Amendment (2) it is undisputed that any kick by Hilliard was accidental, and (3) regardless, Harris continued to resist and pose a safety threat while handcuffed, Harris's clearly established rights were not violated when Hilliard allegedly kicked Harris.

For these reasons, Hilliard is entitled to qualified immunity for the claim that he kicked Harris while he was on the ground.

## III. ANY ARGUMENT BY PLAINTIFF THAT HE HAD A CLEARLY ESTABLISHED RIGHT WAS NOT PRESERVED FOR APPEAL.

To overcome qualified immunity, it is the Plaintiff's burden to articulate a violation of a federal right and to show that the right at issue was clearly established at the time of the alleged violation. *See Balogh v. Virginia*, 120 F.4th 127, 134 (4th Cir. 2024); *see also Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (reversing denial of qualified immunity on motion to dismiss). If an argument is not raised at the District Court level, it cannot be made on appeal. *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 226 (4th Cir. 1997); *Buffington v. Baltimore Cty. Md.*, 912 F.2d 113, 120-22 (4th Cir. 1990) (drawing a distinction between raising

the issue of whether a constitutional violation occurred versus whether qualified immunity applies).

Here, at the District Court level, Harris did not contest that qualified immunity protected Rosemeier, Hilliard, Wells, and Taylor in this suit. (*See* Pl.'s Resp. in Opp. to Mot. for Summ. J., ECF No. 68.) Plaintiff did not articulate any clearly established right that he claims Appellants violated. Therefore, he did not carry his burden at the District Court level to show that a clearly established right is implicated in this case, and he has not preserved any such argument for appeal.

For these reasons, Harris failed to preserve for appeal any argument that Appellants are not entitled to qualified immunity or that they violated a clearly established right.

## CONCLUSION

The objective of qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Rosemeier, Hilliard, Wells, and Taylor were not plainly incompetent, and they did not knowingly violate the law. They should, therefore, receive qualified immunity. For the reasons stated herein, this Court should reverse and direct summary judgment in their favor.

Respectfully submitted,

CHRISTOPHER ROSEMEIER,
CHRISTOPHER HILLIARD,
JONATHAN WELLS,
and
CHARLES TAYLOR, JR.,

By Counsel

Signature
[Notarization Not Required]

Rosalie Pemberton Fessier, VSB #39030
Brittany E. Shipley, VSB # 93767
[Please Print Your Name Here]

## CERTIFICATE OF SERVICE
****************************

I certify that on May 5, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF system. I certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Marvin Harris
700 Rife Road
Apartment 10-A
Waynesboro, VA 22980

Signature